IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| B&B TARGET CENTER, INC., *et. al.*,<br><br>**Plaintiffs**,<br><br>v.<br><br>JOSE FIGUEROA-SANCHA, *et. al.*,<br><br>**Defendants**. | CIVIL NO. 11-1901 (FAB) |

**OPINION AND ORDER**[1]

BESOSA, District Judge.

Before the Court is the defendants' motion to dismiss all of plaintiffs' B&B Target Center, Inc. ("B&B"), Luis A. Bermudez-Gonzalez ("Bermudez") and Ana M. Latorre-Echeandia ("Latorre") (collectively, "plaintiffs") claims pursuant to Federal Rule of Civil Procedure 12(b)(6) ("Rule 12"). After reviewing the plaintiffs' complaint and associated pleadings, the Court **GRANTS IN PART and DENIES IN PART** the defendants' motion to dismiss.

I. Background

   A. Procedural History

      Plaintiffs filed their complaint on September 14, 2011 against defendants Jose Figueroa-Sancha ("Figueroa") in his personal and official capacity as Superintendent of the Puerto Rico

---

[1] Justin Rowinsky, a second-year student at the Georgetown University Law Center, assisted in the preparation of this Opinion and Order.

Civil No. 11-1901 (FAB)                                                       2

Police Department ("PRPD"); Carlos W. Carrion-Rodriguez ("Carrion") in his personal and official capacity as Director of the PRPD's Organized Crime Office; and Jose G. Camacho-Crespo ("Camacho"), Raymond Ramos-Bajandas ("Ramos"), Miguel Crespo-De Leon ("Crespo") and Arelys Serrano-Crespo ("Serrano") in their personal and official capacities as officers in the PRPD's Gun Shop Inspections & Investigations Division.  Plaintiffs also included in their complaint defendants Juan C. Puig-Morales ("Puig") in his personal and official capacity as Secretary of the Puerto Rico Department of Treasury ("Treasury"); Elba N. Vazquez-Rasmo ("Vazquez") in her personal and official capacity as Director of the Treasury's Bureau of Consumer Taxes; and Auberto Otero-Rivera ("Otero") in his personal and official capacity as an Internal Revenue Officer of the Treasury's Bureau of Consumer Taxes.

    Plaintiffs filed the complaint pursuant to 42 U.S.C. § 1983, claiming that the defendants violated their civil rights. The plaintiffs seek punitive damages, compensatory damages, and injunctive relief resulting from the defendants' alleged violations of the plaintiffs' Fourth and Fourteenth Amendment rights, the defendants' direct and supervisory liability, and defendants' failure to take remedial action.  <u>Id.</u> at pp. 20-25.  Plaintiffs also seek attorney's fees and costs pursuant to 42 U.S.C. § 1988.

Civil No. 11-1901 (FAB)                                                      3

      The defendants have filed a total of four motions to dismiss, (Docket Nos. 18, 19, 22, and 37), and all defendants have filed motions specifically to join Puig's motion to dismiss that was filed on November 28, 2011. (Docket No. 22.) The plaintiffs filed two responses in opposition, one on January 9, 2012, (Docket No. 30), and one on March 27, 2012, (Docket No. 43). Defendants seek dismissal of all claims against all defendants pursuant to Rule 12(b)(6) for plaintiffs' failure to state a claim.

    **B.**    **Factual History**

      On January 5, 2009, the Federal Bureau of Alcohol, Tobacco and Firearms ("ATF") sent an email to B&B informing it that a weapon traced to B&B's name had been found outside of the business. (Docket No. 1 at ¶ 3.3.) B&B discovered that the weapon was part of a group of twenty-five firearms that should have been sent to a gun store in Oklahoma, but were never received. Id. B&B then filed a claim with the ATF and PRPD on January 8, 2009, which prompted B&B, the ATF and the PRPD to conduct a complete inventory of B&B's firearms from January 8 through January 22, 2009. Id. at ¶ 3.4. The inventory revealed that twenty-eight firearms were missing, and the plaintiffs reported that finding to the PRPD. Id.

      Unbeknownst to the plaintiffs, Superintendent Figueroa sent a letter to Secretary Puig on May 1, 2009, recommending that Treasury revoke B&B's Gunsmith License ("license") based on B&B's

Civil No. 11-1901 (FAB)                                                  4
_____

alleged negligent care and handling of firearms at its business. Id. at ¶ 3.5.  Officers Camacho and Serrano inspected B&B on May 27 and August 25, 2009, respectively.  Id. at ¶ 3.6.  They issued two separately signed Quarterly Inspection Reports that certified B&B was in compliance with all applicable laws and regulations.  Id. Despite those inspections, plaintiffs were notified that their license was revoked in a letter signed by Vazquez and personally delivered to them by Otero on September 17, 2009.  Id. at ¶ 3.7.

The September 17, 2009 letter notified the plaintiffs that B&B's license was summarily revoked, but "failed to adequately expound the specific factual allegations of B&B's purported misconduct."  Id. at ¶ 3.8.  Immediately upon receiving the letter, the plaintiffs' requested to examine the files on which the revocation was based, but Otero refused.  Id. at ¶ 3.10.  Later that same day, the plaintiffs filed a claim before the Treasury's Office of Procedural Adjudications, requesting a dismissal of the summary revocation of their license.  Id.  The plaintiffs then showed a copy of the complaint to Otero (also on September 17, 2009) who refused a second time to allow the plaintiffs to examine the file on which the license revocation was based.  Id.  On September 18, 2011, plaintiffs met with Director Carrion, Officers Camacho and Ramos and others at PRPD's General Headquarters in order to "ascertain the basis" for the revocation of their license.

Civil No. 11-1901 (FAB)                                                        5

Id. at ¶ 3.12.  The plaintiffs requested to examine the relevant files for a third time, and were denied again.  Id. at ¶ 3.13. Officer Camacho stated that the revocation was based on an inconsistency between B&B's inventory and the PRPD's electronic registry; once the deficiency was corrected the license would be re-instated.  Id.  His explanation was incorrect.  Id.  The plaintiffs then requested that their license be temporarily restored pending a complete audit by an external expert.  Id. at ¶ 3.14.  That suggestion was also denied.  Id.

From September 21, 2009, through September 28, 2009, the PRPD conducted a warrantless search of B&B and seized all of B&B's firearms.  Id. at ¶ 3.17.  Some of the seized firearms were legally owned by third parties who had deposited them with B&B for custody and/or repair.  Id. at ¶ 3.17.  The plaintiffs filed a second claim before the Treasury's Office of Procedural Adjudications requesting an immediate hearing in lieu of B&B's continuing "economic and moral damages."  Id. at ¶ 3.19.  On October 22, 2009, the plaintiffs also sent a similar letter to Superintendent Figueroa that detailed the damages B&B was suffering:  loss of income, damage to their reputation, and several lawsuits against the plaintiffs by customers for various contractual damages.  Id. at ¶¶ 3.20, 3.21.

Civil No. 11-1901 (FAB)                                                         6

On March 15, 2010, the plaintiffs presented their case during an Administrative Hearing. Id. at ¶ 3.22. The Treasury's Examining Officer issued a Resolution on September 8, 2010, (which became final on November 15, 2010) that found for the plaintiffs and required the re-issuing of the plaintiffs' license. Id. at ¶ 3.23. The Resolution found that the police had erred in revoking the license and that the "Plaintiffs' due process rights were clearly violated." Id. The plaintiffs' license was not reinstated, however, until December 1, 2010, and B&B's firearms and ammunition were not returned until December 22-23, 2010. Id. at ¶ 3.25. The plaintiffs seek economic and moral damages accrued during the sixteen months their license was suspended that resulted from the defendants' actions, for a total of $19,000,000. Id. at pp. 19-20.

**II. Legal Standard for a Rule 12(b)(6) Motion to Dismiss**

Pursuant to Rule 12(b)(6), a court can dismiss a complaint that fails to state a claim upon which relief can be granted. When assessing whether the plaintiff's complaint provides "fair notice to the defendants" and states "a facially plausible legal claim," the Court must utilize a two-pronged approach. See Ocasio-Hernandez v. Fortuño-Burset, 640 F.3d 1, 11-12 (1st Cir. 2011). First, the Court can disregard statements that "offer legal conclusions couched as fact," because the plaintiff must do more

than "parrot the elements of the cause of action." Id. at 12. Then, the Court is bound to treat all "properly pled factual allegations" as true and draw all reasonable inferences in the plaintiffs' favor. Id. The Court must base its determination solely on the material submitted as part of the complaint and expressly incorporated within it, unless the motion is converted to one for summary judgment. See Alternative Energy, Inc. v. St. Paul Fire and Marine Ins. Co., 267 F.3d 30, 33 (1st Cir. 2001).

The pled factual material must be sufficient "to raise a right to relief above the speculative level," and permit the Court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)). The Supreme Court has held that the plaintiff's pleading must cross "the line between possibility and plausibility." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 577 (2007). The Court should not attempt to forecast the likelihood of success even if proving the alleged facts is "improbable." Id. at 556. Therefore, a complaint that contains a plausible basis for relief "may proceed even if it appears that a recovery is very remote and unlikely." Id. at 556 (internal citation omitted).

**III. Legal Standard for section 1983 Claims**

Pursuant to 42 U.S.C. § 1983, a party may bring a lawsuit against state officials "acting under color of state law" who

Civil No. 11-1901 (FAB)                                                8

violate federal constitutional provisions or federal law. <u>Elena v. Municipality of San Juan</u>, 677 F.3d 1, 10 (1st Cir. 2012). Puerto Rico is considered a state for the purposes of section 1983 claims. <u>See, e.g.</u>, <u>id.</u> (citing <u>Deniz v. Muncipality of Guaynabo</u>, 285 F.3d 142, 146 (1st Cir. 2002)).

**IV. Discussion**

Because the defendants have moved to dismiss all of the plaintiffs' claims, the Court will address each in turn.

    **A.   Fourth Amendment Claim**

Plaintiffs allege that the search of B&B and the seizure of the weapons in its possession (including some legally and privately owned guns that were temporarily stored there) was "objectively unreasonable" because it was performed "without any search warrant, probable cause or objective justification." (Docket No. 1 at ¶ 4.2.) Although the plaintiffs have articulated the correct legal standard, their pleading fails to establish a claim for relief.

The Fourth Amendment protects an individual's "houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. It applies to commercial premises as well as private homes. <u>See</u> <u>See v. City of Seattle</u>, 387 U.S. 541, 543 (1967). Commercial property in a "closely regulated industry," however, is subject to a reduced expectation of privacy. <u>See</u>

Civil No. 11-1901 (FAB)                                                9

Giragosian v. Bettencourt, 614 F.3d 25, 29 (1st Cir. 2010) (citing New York v. Burger, 482 U.S. 691, 702 (1987)).  Because a reduced expectation of privacy exists for certain businesses, warrantless inspections of them are a "lawful exercise of the government's power."  Giragosian, 614 F.3d at 29.  The Supreme Court has enumerated three criteria for determining whether the government can perform warrantless inspections of businesses in certain industries:  (1) a substantial government interest that forms the basis of the regulatory scheme, (2) whether the warrantless inspections are necessary to further that regulatory scheme, and (3) if the regulatory scheme is a "constitutionally adequate substitute for a warrant."  Burger, 482 U.S. at 702-03.

   The Supreme Court has held that firearms manufacturing and dealing is one example of a "pervasively regulated industry." United States v. Biswell, 406 U.S. 311, 316 (1972) (holding that the regulation of firearms is "of central importance to [government] efforts to prevent violent crime.").  Businesses such as B&B are aware that their records, firearms and ammunition are subject to regular inspections proscribed by applicable federal or local laws.  See id.  The touchstone for analyzing these warrantless searches and seizures is whether the officers' actions were "objectively reasonable."  See Graham v. Connor, 490 U.S. 386, 397 (1989) (internal citation omitted).  Puerto Rico law prescribes

Civil No. 11-1901 (FAB)                                              10

the regulation of Gunsmith licenses, including allowances for the inspection of "documents and books . . . by any public official or law enforcement agent."  P.R. Laws Ann. tit. 25, § 456i(g) (2009).  In addition, infractions of certain requirements can result in the PRPD Superintendent revoking the business's license.  Infractions include keeping weapons in an unauthorized location, id. at § 456i(a), and failure to keep the required documents and books, id. at § 456i(i).  Finally, businesses that are not certified "by the police to have met the safety measures pursuant to this chapter shall not initiate operations until [the businesses] have [a license]."  P.R. Laws Ann. tit. 25, § 456i(a) (2009).

     Plaintiffs acknowledge that they filed a report with the PRPD documenting the twenty-eight missing weapons discovered during the joint inventory conducted in January 2009.  (Docket No. 1 at ¶ 3.4.)  That report was the basis of Superintendent Figueroa's letter to Secretary Puig that recommended revoking B&B's license.  Id. at ¶ 3.5.  Otero hand-delivered a letter to the plaintiffs, which was signed by Vazquez and stated B&B's license was summarily revoked.  Id. at ¶ 3.7.  Once their license was revoked, B&B's possession of firearms violated applicable Puerto Rico law.  The PRPD's search and seizure of B&B's inventory in September 2009 did not require a warrant because plaintiffs were voluntarily participating in a highly regulated industry.  See GM Leasing Corp.

v. United States, 429 U.S. 338, 357-58 (1977) (internal citation omitted).  Moreover, plaintiffs' complaint has not included any fact demonstrating that the PRPD's search and seizure in September 2009 was objectively *un*reasonable.  There are no allegations of property damage, harassment, or a general lack of professionalism that could sustain their Fourth Amendment claim against a motion to dismiss.  Nor can any reasonable inferences to that effect be drawn from the complaint.  As the First Circuit Court of Appeals has noted, once the Government is "properly on the premises to inspect records, documents, firearms and ammunition," they are "entitled to seize the incriminating records."  United States v. Wilbur, 545 F.2d 764, 765 (1st Cir. 1976).  Similarly, once B&B's license was revoked, the PRPD was entitled and, indeed, obligated to ensure that an unlicensed B&B did not display or sell firearms.  See Biswell, 406 U.S. at 317 (holding that the "seizure of respondent's sawed-off rifles was not unreasonable under the Fourth Amendment.").  Because the defendants' conduct was objectively reasonable, the defendants' motion to dismiss plaintiffs' Fourth Amendment claim is **GRANTED**.  The plaintiffs' Fourth Amendment claim is **DISMISSED WITH PREJUDICE.**

    **B.**    **Fourteenth Amendment Due Process Claim**

The Fourteenth Amendment decrees that no State may "deprive any person of life, liberty, or property, without due

process of law." U.S. Const. amend. XIV.  Due process claims may be brought as procedural due process violations or substantive due process violations.  Plaintiffs allege that their Fourteenth Amendment due process rights were violated both by the lack of a pre-revocation hearing and the long delay before the Administrative Hearing on March 15, 2010.  (Docket No. 1 at p. 23.)  In their complaint, plaintiffs bring only a procedural due process claim.  Because the plaintiffs have failed to plead a substantive due process claim, the Court focuses its analysis solely on procedural due process.

Evaluating a procedural due process claim is "complicated" and "involves a myriad of factors."  Elena v. Municipality of San Juan, 677 F.3d 1, 19 (1st Cir. 2012).  Because the Court is deciding a motion to dismiss, the plaintiffs must have pled facts to establish plausibly that the defendants acted under "color of state law" to deprive the plaintiffs of a "protected property interest" without due process of law.  See Gonzalez-Droz v. Gonzalez-Colon, 660 F.3d 1, 13 (1st Cir. 2011).  The Court will first determine if the plaintiffs' complaint involves a protected property interest, and then address whether the plaintiffs were provided with constitutionally adequate due process.  See Mathews v. Elridge, 424 U.S. 319, 335 (1976).  In evaluating whether the plaintiffs were provided with constitutionally adequate due

process, the Court looks to the "Mathews" test that requires the Court to balance: (1) the private interest affected by the official action, (2) the risk of erroneous deprivation through the procedures used, and (3) the government's interest. Id.

### i.  Protected Property Interest

First, B&B's license was a property interest protected by the Due Process clause of the Fourteenth Amendment because it was essential to its livelihood. See Gonzalez-Droz, 660 F.3d at 13 (holding that revoking a doctor's license to practice medicine and earn a livelihood was "the necessary showing of a deprivation of a constitutionally protected interest."); Bell v. Burson, 402 U.S. 535, 539 (1971) ("Once licenses are issued . . . their continued possession may become essential in the pursuit of a livelihood."). B&B was deprived of its license from September 17, 2009, through December 1, 2010. (Docket No. 1 at ¶¶ 3.7, 3.25.) During those sixteen months the plaintiffs allege that they lost income, faced lawsuits from customers, and suffered a decline in their reputation. These negative consequences on the plaintiffs' livelihood that resulted from the revocation of the license sufficiently establish that B&B's license is a protected property interest.

Civil No. 11-1901 (FAB) 14

### ii. Constitutionally Adequate Process

The plaintiffs aver that their due process rights were violated by the lack of a pre-revocation hearing, and the length of time until the Administrative Hearing was finally held. The Court will address both contentions.

#### a. Pre-revocation Hearing

The plaintiffs first argue that the revocation of B&B's license violated procedural due process because they were not afforded a pre-revocation hearing. (Docket No. 1 at ¶ 3.7.) Even though a hearing prior to revoking a property interest is the default requirement to satisfy procedural due process, see, e.g., Bell, 402 U.S. at 542, there are exceptions for cases "where a State must act quickly, or where it would be impractical to provide pre-deprivation process." Elena, 677 F.3d at 20 (quoting Gilbert v. Homar, 520 U.S. 924, 930 (1997)). These exceptions principally derive from the third "Mathews" factor: the relevant government interest. As previously discussed, weapons dealerships are a "perversely regulated industry" and are accordingly one of the exceptions to the usual pre-deprivation hearing requirement. See Biswell, 406 U.S. at 316; Spinelli v. City of New York, 579 F.3d 160, 170 (2d Cir. 2009) (holding that a gun store owner was not entitled to pre-deprivation due process). The local and federal governments' interest in preventing the unlicensed sale and

Civil No. 11-1901 (FAB)                                           15

distribution of firearms necessitated prompt action by the PRPD once B&B's license was revoked.  See Spinelli, 579 F.3d at 170 (holding that "the City had sufficient cause to take prompt action to address the security infractions" at the gun store) (internal quotation omitted).  Therefore, the defendants were not constitutionally required to provide a pre-revocation hearing to the plaintiffs.

### b.   Post-revocation Hearing

Even if there are exigent circumstances necessitating prompt action, "there must be an adequate post-deprivation hearing within a reasonable time" in order to satisfy procedural due process.  Suboh v. Dist. Attorney's Office of Suffolk Dist., 298 F.3d 81, 94 (1st Cir. 2002).  Fundamentally, the plaintiffs contend that holding the Administrative Hearing six months after their license was revoked was not reasonable.  The Court agrees.

The primary purpose of a post-revocation hearing within a reasonable time is to account for the second "Mathews" factor, the risk of an erroneous deprivation.  Although whether the deprivation was actually erroneous is "beside the procedural due process point," the Court must examine "the fairness of the protocol" and "the risks of a lasting (erroneous) deprivation."  Amsden v. Moran, 904 F.2d 748, 753-54 (1st Cir.

Civil No. 11-1901 (FAB)                                                    16

1990).  The focus must be on the "ready availability of [a] prompt post-deprivation review," and that was lacking in this case.  See Gonzalez-Dron, 660 F.3d at 14.  The six months between the revocation of the plaintiffs' license and the Administrative Hearing is much longer than other durations previously upheld as constitutional.  See Gonzalez-Dron, 660 F.3d at 14 (two weeks); Gamble v. Webb, 806 F.3d 1258, 1261 (5th Cir. 1986) (eight days).  In contrast, the Second Circuit Court of Appeals recently held that a fifty-eight day delay between suspending a gun shop's license and a post-suspension hearing was too long.  Spinelli, 579 F.3d at 173 ("[T]he delay Spinelli actually experienced still exceeded the bounds of due process.").  Because the facts of Spinelli are very similar to those of this case, its holding is particularly persuasive.

The Spinelli Court echoed the Supreme Court's admonition that "[a]t some point, a delay in the post-termination hearing would become a constitutional violation." Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 547 (1985).  Without a license, B&B was unable to function and the plaintiffs were unable to earn any income.  See FDIC v. Mallen, 486 U.S. 230, 242 (1988) ("In determining how long a delay is justified in affording a post-suspension hearing and decision, it is appropriate to examine . . . the harm to this interest occasioned by delay . . . .").  It

Civil No. 11-1901 (FAB)                                               17

was, therefore, "incumbent upon" the Commonwealth "to provide a prompt hearing," where the plaintiffs could have presented their views and arguments on the merits of the revocation of their license.  See Spinelli, 579 F.3d at 173-74.  In addition, plaintiffs exhausted all of their possible state remedies.  They filed two complaints before the Treasury's Office of Procedural Adjudications, and requested permission to examine the files that were the basis of the decision to revoke their license.  (Docket No. 1 at ¶¶ 3.7, 3.8, and 3.10-3.13.)  None of those options provided any relief to the plaintiffs, who were without their sole source of income for almost sixteen months.  See Maymi v. Puerto Rico Ports Auth., 515 F.3d 20, 30 (1st Cir. 2008) (holding that "the state remedies" of reinstating the plaintiff's salary and awarding retroactive relief had provided "sufficient procedural due process for the harms allegedly suffered" by her).

While the defendants may be able to provide evidence demonstrating an important government interest that justified the lengthy delay, plaintiffs have satisfied their current burden of pleading allegations that if true would establish their Fourteenth Amendment due process rights were violated.  At this stage, without more guidance from the parties on this issue, the Court finds that plaintiffs have sufficiently pled facts to show that they have been deprived of constitutionally adequate

Civil No. 11-1901 (FAB)                                                18

process.  Accordingly, the defendants' motion to dismiss this specific claim is **DENIED**.[2]

### C. Damages and Injunctive Relief

Plaintiffs have admitted that the defendants cannot be liable for monetary damages pursuant to section 1983 because of the Eleventh Amendment.  (Docket No. 43 at p. 5.)  Puerto Rico enjoys the full protection of the Eleventh Amendment, and it is "well settled" that state officials acting in their official capacity are not liable for damages.  See, e.g., Futura Dev. of Puerto Rico, Inc. v. Estado Libre Asociado de Puerto Rico, 144 F.3d 7 (1st Cir. 1998); Wang v. New Hampshire Bd. of Registration in Med., 55 F.3d 698, 700 (1st Cir. 1995).  Defendants can be sued for damages in their individual capacity, however, and because the plaintiffs' claim of a Fourteenth Amendment violation is moving forward, the defendants may still be liable.  This logic is also applicable to the plaintiffs' request for injunctive relief, a remedy that can be awarded against state officials acting in their official capacity despite the Eleventh Amendment.  See Rosie D. ex rel. John D. v. Swift, 310 F.3d 230, 234 (1st Cir. 2002) (citing *Ex Parte* Young,

---

[2] The Court also **DENIES** the defendants' motion to dismiss with respect to the defendants' direct liability, supervisory liability, and failure to take remedial action.  Because these liability claims depend on the success of the plaintiffs' due process claim, the Court reserves judgment.

Civil No. 11-1901 (FAB)                                                   19

209 U.S. 123 (1908)) (holding that "suits against state officials seeking prospective injunctive relief" are common).  Whether the defendants are liable in their individual (damages) or official (injunctive relief) capacities is yet to be determined.[3]

The Court notes, however, that Superintendent Figueroa and Secretary Puig are not currently in those positions, and, therefore, cannot be held liable in an official capacity for injunctive relief.  The Court grants the plaintiffs until **July 9, 2012** to amend their pleading and substitute Figueroa and Puig (and any other defendant not currently in the position he or she was in when the complaint was filed) with their current successors.  Figueroa and Puig and the other defendants are still potentially liable in their individual capacities for damages.

---

[3] The Court also reserves judgment on the plaintiffs' claim for attorney's fees pursuant to 42 U.S.C. § 1988.  The Court will address the issue after the merits of the remaining claims are decided.

Civil No. 11-1901 (FAB)                                                    20

## V.  Conclusion

For the reasons discussed above, the Court **GRANTS** the defendants' motion to dismiss the plaintiffs' Fourth Amendment claim.  The Court also **DENIES** the defendants' motion to dismiss with respect to the plaintiffs' Fourteenth Amendment, supervisory liability, direct liability, and failure to take remedial action claims.

**IT IS SO ORDERED**.

San Juan, Puerto Rico, July 3, 2012.

s/ Francisco A. Besosa
FRANCISCO A. BESOSA
UNITED STATES DISTRICT JUDGE
